IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CYNTHIA VANFOSSEN,

 Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

 Defendant.

No. C13-0114

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 A. Vanfossen's Education and Employment Background . . . . . . . . . . . 4
 B. Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . . 4
  1. Vanfossen's Testimony . . . . . . . . . . . . . . . . . . . . . . 4
  2. Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . 5
 C. Vanfossen's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
 A. ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . 10
 B. Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . 12
  1. Credibility Determination . . . . . . . . . . . . . . . . . . . . 12
  2. Dr. Dearden's Opinions . . . . . . . . . . . . . . . . . . . . . 16

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Cynthia Vanfossen on October 21, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Vanfossen asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Vanfossen requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the

decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently.");  *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Vanfossen's Education and Employment Background

Vanfossen was born in 1965. She is a high school graduate. She attended college for about 18 months. In the past, her primary occupation was being a certified medication technician at the Lutheran Home for the Aged in Vinton, Iowa.

### B. Administrative Hearing Testimony

#### 1. Vanfossen's Testimony

At the administrative hearing, Vanfossen testified that she became unable to perform full-time work due to pain, dizziness, muscle spasms, and extreme tiredness, associated with multiple sclerosis ("MS"). Vanfossen further explained that she has pain and numbness in her hands and arms due to both MS and bilateral carpal tunnel syndrome. Additionally, she stated that the pain in her legs makes it difficult for her to sleep. Lastly, Vanfossen discussed having memory problems. She stated "I have to write everything down. I have to write down what I'm supposed to be doing."[1]

Vanfossen also discussed her daily activities, and how they had changed due to her alleged disability. According to Vanfossen, prior to the onset of her disability, she was capable of working 40 hours per week, keeping her house clean, taking care of her family, and running necessary errands. Since her disability onset, she has only been able to do "a little bit here and there." She stated she needs to take "lots of breaks" during the day and

---

[1] Administrative Record at 46.

4

change positions regularly. She also stated that family members now help her with household chores.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger Marquardt with a hypothetical for an individual who could:

> occasionally lift and carry 20 pounds, and could frequently lift and carry 10 pounds. She could stand or walk for six hours in an eight-hour day. She could sit for six hours in an eight-hour day. Her ability to push and pull, including the operation of hand and foot controls, would be unlimited within these weights. She could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch and crawl. She would need to avoid concentrated exposure to extreme heat and hazards such as heights and machinery.

(Administrative Record at 54.) The vocational expert testified that under such limitations, Vanfossen could not return to her past relevant work, but would have transferable skills to perform the following jobs: phlebotomist and first aide attendant. The vocational expert also testified that under the same limitations, Vanfossen would be capable of performing the following unskilled work: (1) injection molding machine operator (1,000 positions in Iowa and 130,000 positions in the nation), (2) housekeeping cleaner (5,000 positions in Iowa and 400,000 positions in the nation), and cashier (30,000 positions in Iowa and 1,000,000 positions in the nation). Finally, the vocational expert testified that if a limitation to sedentary, unskilled work was added to the hypothetical, Vanfossen could perform the following jobs: (1) bench assembler (500 positions in Iowa and 60,000 positions in the nation), (2) addresser (675 positions in Iowa and 72,000 positions in the nation), and (3) information clerk (400 positions in Iowa and 31,000 positions in the nation). The ALJ also inquired whether an individual who worked at a slow pace for one-third of the workday or was off task 20 percent of the workday could find competitive

employment. The vocational expert responded that such an individual would be precluded from competitive employment.

Vanfossen's attorney also questioned the vocational expert:

> Q: If the hypothetical person needed to take unscheduled rest breaks during an eight-hour workday, would need to take more than one, but may take two or three, needing to be off the job half an hour to 15 minutes per extra break, would they be competitively employable then?
> A: No, they would not.
> Q: If that hypothetical person were going to miss more than three days of work a month due to their illness, would they be competitively employable?
> A: If that were on a consistent basis, no they would not.

(Administrative Record at 57.)

### C. Vanfossen's Medical History

On January 13, 2010, Vanfossen was referred by her primary physician to Dr. Laurence Krain, M.D., for a neurologic consultation. Vanfossen's chief complaints were possible MS, dizziness, pain, and numbness. In reviewing Vanfossen's medical history, Dr. Krain noted that in 2006:

> Head MRI showed numerous foci, increased T2 signal, and supratenorial white matter in the left cerebellum consistent with multiple sclerosis . . . suggesting active disease. Dr. Lee recommended further evaluation or follow up. [Vanfossen] was to follow up at the University of Iowa Hospitals Neurology Department, but there is no evidence that she did.

(Administrative Record at 246.) Dr. Krain further noted that due to her recent complaints of dizziness, her primary physician, Dr. Dearden, ordered another head MRI. The MRI, again, showed evidence of MS. Upon examination, Dr. Krain diagnosed Vanfossen with remitting relapsing MS, left lateral femoral cutaneous neuropathy, anxiety, depression, and acephalic visual migraines. Dr. Krain further opined that Vanfossen's "complaint of

6

dizziness is I feel nonspecific. . . . I am more suspicious of it being a somatic manifestation of anxiety, possibly superimposed panic."[2] Dr. Krain recommended medication as treatment.

On December 2, 2010, Dr. Rene Staudacher, D.O., reviewed Vanfossen's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Vanfossen. Dr. Staudacher determined that Vanfossen could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Vanfossen could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Additionally, Dr. Staudacher found that Vanfossen should avoid concentrated exposure to extreme heat and hazards, such as machinery and heights. Dr. Staudacher found no manipulative, visual, or communicative limitations. Dr. Staudacher concluded that:

> While [Vanfossen] does have the [medically determinable impairment] of MS, her objective exam shows very little in the way of abnormalities. Strength is intact. Romberg and coordination testing intact with the exception of [Vanfossen] having some difficulty completing heel/toe. As such, [Vanfossen] would be capable as outlined, which is consistent with her [activities of daily living]. Dr. Krain did state that he was suspicious that [Vanfossen's] allegations of dizziness were a manifestation of anxiety.

(Administrative Record at 409.)

---

[2] Administrative Record at 248

On December 10, 2010, Vanfossen was referred by DDS to Dr. Randall Watkins, Ph.D., and Joan Jacob, a licensed psychologist, for mental status examination. In reviewing Vanfossen's medical history, Dr. Watkins and Jacob noted:

> [Vanfossen] was diagnosed with Multiple Sclerosis in December 2009. Symptoms of this disease include pain in both legs, muscle spasms, and neuropathy of her left leg. She is experiencing no significant memory loss. She has had some dizzy spells. [Vanfossen] also experiences numbness in her hands. [She] reports she has had depression for approximately 1-1/2 years, since she has been diagnosed with Multiple Sclerosis. She also experiences anxiety, worrying about her health and her job, which she perceives as being stressful.

(Administrative Record at 413-414.) Upon examination, Dr. Watkins and Jacob diagnosed Vanfossen with adjustment disorder with depressed and anxious mood. Dr. Watkins and Jacob opined that:

> [Vanfossen] is capable of remembering and understanding instructions, procedures, and locations. She appears also capable of maintaining attention and concentration. Her pace may be slowed, depending on the nature of the task. She appears capable of interacting appropriately with supervisors, co-workers and the public. At this time, it is believed that she could be expected to use good judgment and respond appropriately to changes in the workplace. . . . [Vanfossen] has been diagnosed with Multiple Sclerosis and, as a result, her capability of competitive employment may change over time.

(Administrative Record at 414-415.)

On January 7, 2011, Dr. Myrna Tashner, Ed.D., reviewed Vanfossen's medical records and provided DDS with a Psychiatric Review Technique assessment for Vanfossen. Dr. Tashner diagnosed Vanfossen with adjustment disorder with depressed and anxious mood and history of anxiety disorder. Dr. Tashner determined that Vanfossen had no limitations in the following areas: activities of daily living, maintaining social

8

functioning, and maintaining concentration, persistence, or pace. Dr. Tashner concluded that "[b]ased on the evidence in file, [Vanfossen] does not appear to have a severe mental [medically determinable impairment] that would prevent her from being able to perform most work-like activities."[3]

On July 28, 2011, at the request of Vanfossen's attorney, Dr. Mark Dearden, D.O., filled out a "Multiple Sclerosis Residual Functional Capacity Questionnaire" for Vanfossen. Dr. Dearden diagnosed Vanfossen with multiple sclerosis. Dr. Dearden identified the following symptoms for Vanfossen: fatigue, balance problems, poor coordination, weakness, unstable walking, numbness, sensory disturbance, bladder problems, pain, difficulty remembering, depression, and difficulty solving problems. Dr. Dearden opined that Vanfossen's prognosis was "fair." With regard to her overall functional abilities, Dr. Dearden found that Vanfossen suffered from generalized weakness with minimal activity. Dr. Dearden further found that Vanfossen's experience of pain "frequently" interferes with her attention and concentration. Dr. Dearden also opined that Vanfossen: (1) is capable of low stress jobs; (2) can walk less than one block; (3) would need a job that permits shifting positions at will from sitting, standing, or walking; (4) would need to take unscheduled breaks during a typical eight-hour workday lasting 30 minutes to 1 hour; (5) would need to elevate her legs 50 to 60 percent of the time during an eight-hour workday if she was performing a sedentary job; (6) could occasionally lift 10 pounds or less; (7) could occasionally twist, rarely stoop, bend, crouch, or climb stairs, and never climb ladders; and (8) should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery and heights). Lastly, Dr. Dearden stated that Vanfossen would miss more than four days of work per month due to her impairments or treatment for her impairments.

---

[3] Administrative Record at 428.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Vanfossen is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed

> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Vanfossen had not engaged in substantial gainful activity since November 8, 2010. At the second step, the ALJ concluded from the medical evidence that Vanfossen has the following severe impairment: multiple sclerosis. At the third step, the ALJ found that Vanfossen did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Vanfossen's RFC as follows:

> [Vanfossen] has the residual functional capacity to perform
> light work . . . in that [she] is capable of carrying/lifting
> twenty pounds occasionally and ten pounds frequently, and can

> stand/walk/sit for six hours each of an eight hour day.
> [Vanfossen] can push/pull and use hand and foot controls
> within these weights. She can occasionally climb ramps/stairs,
> balance, stoop, crouch, kneel, and crawl but never climb
> ladders, ropes, scaffolding. [She] should avoid hazards, such
> as fast and dangerous machinery and unprotected heights, and
> extreme heat.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Vanfossen unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Vanfossen could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Vanfossen was not disabled.

### B. Objections Raised By Claimant

Vanfossen argues that the ALJ erred in two respects. First, Vanfossen argues that the ALJ failed to properly evaluate her subjective allegations of disability. Second, Vanfossen argues that the ALJ failed to properly consider the opinions of her treating physician, Dr. Dearden.

#### 1. Credibility Determination

Vanfossen argues that the ALJ failed to properly evaluate her subjective allegations of disability. Vanfossen maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Vanfossen's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally

defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Vanfossen's subjective allegations of disability as follows:

> In terms of [Vanfossen's] alleged limitations, the medical evidence does not support a finding of total disability. The objective medical evidence of record revealed a prior history of optic neuritis in 2006 and abnormal magnetic resonance imaging scan suggestive of active multiple sclerosis (MS). The treating doctor advised [Vanfossen] to seek a neurological evaluation, which [she] failed to do at that time. . . .[4]
>
> The level and severity of medical findings, however, do not correlate to a level of complete disabling impairment. At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in [Vanfossen's] testimony), [Vanfossen] has reported a myriad of daily activities consistent with the residual functional capacity detailed above. [Vanfossen] does household chores including laundry, vacuuming, shopping and meal preparation. Her physical examinations have been largely normal and strength is intact. Romberg and coordination testing was intact with the exception of having some difficulty completing heel/toe walking more recently. There is no medical evidence of record to support [Vanfossen's] allegations that she has bladder incontinence and an abdominal hernia. While she reported having multiple sclerosis (MS) "for years" or since 2006, the undersigned notes that it was not actually diagnosed with the condition until several years later. [Vanfossen] testified to dizzy spells and numbness in her extremities, yet still drives and does not use

---

[4] The ALJ goes on to discuss in detail, Vanfossen's medical history and later treatment for MS. *See* Administrative Record at 17-21.

14

> an assistive device, calling into question the severity of her symptoms. Her emergency room visits are not as frequent according to medical evidence as insinuated by [Vanfossen] and her family's statements. [Vanfossen] also testified about constant fatigue but described her daily activity to the effect that she does not have time during the day to nap.
>
> [Vanfossen] has not generally received the amount and type of medical treatment one would expect for a totally disabled individual (especially for alleged mental impairments), considering the relatively infrequent trips to the doctor for allegedly disabling symptoms and significant gaps in [her] history of treatment.
>
> As noted above, there have been some discrepancies in information reported by [Vanfossen] to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities in functioning. While the inconsistent information provided by [Vanfossen] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by [Vanfossen] generally may not be entirely reliable. Therefore, [Vanfossen's] credibility is eroded.

(Administrative Record at 17; 19-20.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Vanfossen's medical history, treatment history, functional restrictions, effectiveness of medications, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Vanfossen's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized

and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Vanfossen's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Dr. Dearden's Opinions

Vanfossen argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Dearden. Specifically, Vanfossen argues that the ALJ failed to properly weigh Dr. Dearden's opinions. Vanfossen also argues that the ALJ's reasons for discounting Dr. Dearden's opinions are not supported by substantial evidence in the record. Vanfossen concludes that this matter should be remanded for further consideration of Dr. Dearden's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir.

2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed Dr. Dearden's opinions as follows:

> General practitioner, Mark Deardon[, (*sic*)] M.D., [(*sic*)] offered in June 2011 that [Vanfossen] was significantly limited in her ability to function on a daily basis due to multiple

17

> sclerosis (MS) symptoms. He opined that she would need to elevate her legs 50-60% of the day and would miss more than four days of work a month, although no reason for these restrictions is consistent with the medical evidence of record that shows minimal chronic symptoms and only exacerbations every 4-6 weeks. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Vanfossen], and seemed to uncritically accept as true most, if not all, of what [she] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Vanfossen's] subjective complaints. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. Although the doctor stated in his opinion that [Vanfossen] was significantly limited in her ability to work, it is not clear that the doctor was familiar with the definition of "disability" contained in the Social Security Act and regulations. The doctor issued an opinion concerning vocational issues, which he is not qualified to do; nor is he qualified to evaluate how those vocational issues concern the finding of disability for [Vanfossen] under the Social Security Act and regulations. The doctor's opinion is without substantial support from the other evidence of record, including his own longitudinal treatment history of [Vanfossen] that was routine and conservative management since 2009 with mild symptomology and only occasional multiple sclerosis flares, which obviously renders it less persuasive. The undersigned therefore declines to afford Dr. Deardon's [(sic)] opinion controlling weight.

(Administrative Record at 20-21.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Dearden. Also, the Court finds the ALJ provided "good reasons" for rejecting Dr. Dearden's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

## V. CONCLUSION

The Court finds that the ALJ properly determined Vanfossen's credibility with regard to her subjective complaints of disability. The Court also finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Dearden. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 5th day of September, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA